UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
LYNNE CABAN,

                Plaintiff,

          - against -

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-929 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Lynne Caban ("Plaintiff"), proceeding *pro se*, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("Commissioner") to deny her concurrent claims for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"), pursuant to Title II and Title XVI of the Social Security Act ("the Act"), respectively. Before the Court is the Commissioner's Motion for Judgment on the Pleadings, as well as Plaintiff's Affirmation in Opposition to the Commissioner's Motion for Judgment on the Pleadings. (Dkts. 13, 16.) This Court construes Plaintiff's Affirmation as a Cross-Motion for Judgment on the Pleadings, as "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to 'raise the strongest arguments that they suggest.'" *Dowsett v. Comm'r of Soc. Sec.*, 07-CV-2018 (SLT) (SMG), 2017 WL 2799852, at *1 (E.D.N.Y. Jun. 26, 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Plaintiff seeks reversal of the Commissioner's decision or, alternatively, remand for further administrative proceedings. The Commissioner asks the Court to affirm the denial of Plaintiff's SSDI and SSI claims.

For the reasons that follow, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. This case is remanded for further proceedings consistent with this Order.

## BACKGROUND

### I. Procedural History

On April 25, 2015, Plaintiff filed concurrent applications for SSDI and SSI benefits, alleging disability beginning on January 19, 2015. (Administrative Transcript ("Tr."),[1] Dkt. 7, at 13, 232–33.) On July 16, 2015, the application was initially denied (*id.* at 149–58, 11–21), and on August 21, 2015, Plaintiff filed a request for a hearing (*id.* at 169–70). Plaintiff appeared[2] before Administrative Law Judge Laura Michalec Olszewski ("the ALJ") on January 26, 2017. (*Id.* at 26–77.) In a decision dated March 21, 2017, the ALJ determined that Plaintiff was not disabled under the Act and was not eligible for the benefits for which she had applied. (*Id.* at 7–21.) On December 27, 2017, the ALJ's decision became final when the Appeals Council of the Social Security Administration's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision. (*Id.* at 1–6.) Thereafter Plaintiff timely[3] commenced this action. (Complaint ("Compl."), Dkt. 1.)

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower left corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[2] Though pursuing this appeal *pro se*, Plaintiff was represented by counsel at the hearing before the ALJ. (*See* Tr. at 26.)

[3] According to congressional statute,

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

## II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 19, 2015, and that Plaintiff suffered from the following severe impairments: (1) depression, (2) anxiety, (3) low blood pressure, and (4) ulcers. (Tr. at 12.) The ALJ also considered Plaintiff's history of diabetes, gastric bypass surgery, and obesity, and determined that they were not severe impairments. (*Id.* at 13.) Having determined that Plaintiff satisfied her burden at the first two steps, the ALJ progressed to the third step and determined that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings, including 5.07, 12.04, or 12.06, *see* 20 CFR

---

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on January 2, 2018 and Plaintiff filed the instant action on February 26, 2018—55 days later. (*See generally* Compl., Dkt. 1.)

3

§ 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. at 13–15.) Moving to the fourth step, the ALJ found that Plaintiff maintained residual functional capacity ("RFC")[4] to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that the individual can lift and[/]or carry 10 pounds occasionally. [She][5] can sit for six hours in an eight-hour workday, stand and or walk for two hours in an eight-hour workday. The individual can occasionally climb ramps and stairs, but should never climb ladders and scaffolds. [She] can occasionally balance and stop. [She] should never kneel, crouch and crawl. The individual should work in a low stress environment, defined as involving occasional judgment, occasional decision-making and occasional changes in work setting. [She] should be limited to simple, routine and repetitive tasks. [She] should have occasional interaction with supervisors, co-workers and the public. The individual can have occasional exposure to respiratory irritants such as dust, odors, fumes and gases, and can tolerate occasional exposure to extreme hot and cold temperatures.

(*Id.* at 15.) Relying on her RFC findings, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as "a Cashier, Customer Service, Stock Clerk [or] Retail Sales Clerk." (*Id.* at 18–19.) The ALJ then proceeded to step five to determine whether the claimant—given her RFC, age, education, and work experience—had the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing. (Tr. at 20–21.)

---

[4] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1).

[5] Curiously, the ALJ referred to Plaintiff throughout this section as "they." (*See, e.g.*, Tr. at 15.)

4

## III. STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the [Social Security Administration's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (internal quotation marks omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and alterations omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

## DISCUSSION

Plaintiff puts forth three categories of arguments in support of her motion: (1) the ALJ failed to develop the record by not ordering additional consultative examinations with respect to Plaintiff's physical and psychiatric ailments; (2) the ALJ did not properly weigh the medical evidence presented; and (3) as a whole, the ALJ's decision that Plaintiff's physical and psychiatric impairments did not satisfy the listings is unsupported by the record. The Court finds that remand

is warranted based on the ALJ's failure to sufficiently develop the record with respect to both Plaintiff's physical and psychiatric ailments.[6]

"Before determining whether the Commissioner's conclusions are supported by substantial evidence . . . '[the Court] must first be satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (second alteration in the original)). When "an ALJ fails to adequately develop the record in reaching a conclusion on a claimant's residual functional capacity, the Court is unable to review whether the ALJ's denial of benefits was based on substantial evidence." *Alvarez v. Comm'r of Social Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *18 (E.D.N.Y. Sept. 23, 2015) (citing *Mantovani v. Astrue*, No. 09-CV-3957 (RRM), 2011 WL 1304148, at *4 (E.D.N.Y. Mar. 31, 2011) (Where the ALJ fails to develop the record, "the Court need not—indeed, cannot— reach the question of whether the [ALJ's] denial of benefits was based on substantial evidence." (alteration in original)); *Jones v. Apfel*, 66 F. Supp. 2d 518, 542 (S.D.N.Y. 1999)); *cf. Hillsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error."). An ALJ's "failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case." *Green v. Astrue*, No. 08-CV-8435 (LAP) (FM), 2012 WL 1414294, at *14 (S.D.N.Y. Apr. 24, 2012) (citing *Moran*, 569 F.3d

---

[6] Because the Court grants remand on this ground, it does not address Plaintiff's two other arguments.

at 114–15), *report and recommendation adopted*, No. 08-CV-8435 (LAP) (FM), 2012 WL 3069570 (S.D.N.Y. July 26, 2012); *see also Alvarez*, 2015 WL 5657389, at *14 (quoting same).

I. **Plaintiff's Physical Complaints**

The Court finds that the ALJ failed to sufficiently develop the record with respect to Plaintiff's physical symptoms, as the ALJ did not seek a medical report from Plaintiff's physicians nor refer Plaintiff for a consultative examination to resolve ambiguities in the record.

Here, despite the fact that Plaintiff's application focuses on debilitating symptoms that grew progressively worse after her February 2015 gallbladder removal and hernia surgery (*see e.g.*, Plaintiff's May 10, 2015 Office of Temporary and Disability Assistance Function Report, Tr. at 252–61), the ALJ based her decision to deny benefits primarily on evidence pre-dating Plaintiff's 2015 surgery. In finding Plaintiff not disabled, the ALJ relied on Plaintiff's testimony, emergency room and treatment records from Bellevue Hospital Center, and opinion medical evidence from three sources: (1) a letter from Dr. Deborah Chua, Plaintiff's treating physician, dated February 2, 2015 noting that Plaintiff "is scheduled for [gallbladder removal and hernia] surgery" and that "[a]t this time, we recommend that she is placed on light duty prior to the surgery as her symptoms are aggravated by strenuous activity" (*id.* at 374); and (2) a letter from Nurse Practitioner Tara Zablocki, also dated February 2, 2015, indicating that Plaintiff is "tentatively scheduled for surgery" and she "will be unable to perform heavy lifting or abdominal movements for six weeks after the surgery" (*id.* at 375). (*See also id.* at 18 (ALJ Decision).) The ALJ afforded great weight to Dr. Chua's and Nurse Practitioner Zablocki's letters, reasoning that "[e]ach had treated the claimant, were familiar with her condition, and their recommendations are reasonable based upon the gallbladder removal and hernia surgery that the claimant had." (*Id.* at 19.)[7]

---

[7] By contrast, the ALJ gave "little weight" to the independent report of Dr. Ram Ravi, a specialist in occupational medicine, prepared a few months *after* Plaintiff's February 2015 surgery,

7

In support of her claim that she suffered progressively more debilitating symptoms after her surgery in February 2015, Plaintiff submitted approximately 700 pages of hospital medical records. Among other events, the medical records document the following. On January 12, 2015, Plaintiff presented to the Emergency Department of Bellevue Hospital with persistent and worsening abdominal pain and black stools. (*Id.* at 414–15.) On February 26, 2015, Plaintiff underwent a cholecystectomy (gallbladder removal) and hernia repair. (*Id.* at 433–36.) On March 11, 2015, Plaintiff presented to the hospital with complaints of nausea and vomiting and had a recent weight loss of six pounds. (*Id.* at 409–10.) Plaintiff presented again on March 16, 2015 with nausea and vomiting with meals, and was noted to have tenderness to palpation. (*Id.* at 498–99.) On March 23, 2015, it was noted that Plaintiff presented with abdominal pain, complaining of black stools, constant nausea, and repeat vomiting. (*Id.* at 403.) When Plaintiff continued to complain of pain, an endoscopy was performed which revealed a 14-millimeter ulcer, and a repeat endoscopy on April 21, 2015 showed the continued presence of ulcers. (*Id.* at 438.) On May 4 and 6, 2015, Plaintiff presented with abdominal pain. (*Id.* at 869.) On May 21, 2015, Plaintiff was noted to have "chronic nausea and vomiting." (*Id.* at 518.) On June 8, 2015, Plaintiff underwent a "diagnostic laparoscopy with lysis of adhesions"[8] and an "upper endoscopy." (*Id.* at

---

in June 2015. (Tr. at 19; *see also id.* at 392–95.) In his report, Dr. Ravi concluded, *inter alia*, based on his consultative examination of Plaintiff in June 2015 that she had "no limitation to sitting, standing, bending, pushing, pulling, lifting, and carrying." (*Id.* at 395.)

[8]
> A small bowel obstruction is a blockage in the small intestine. Small bowel obstructions are usually caused by scar tissue, hernia, or cancer. In the United States, most obstructions occur as a result of prior surgeries. The bowel often forms bands of scar (called adhesions) after being handled during an operation. . . . Most obstructions resolve by allowing the small bowel to rest and shrink back to its normal size, thus making the adhesions less problematic. . . . If the patient is not better, then operative intervention may be necessary. The surgery is called *lysis of adhesions*, which means

441.) On June 24, 2016, Plaintiff complained of "two episodes of anal leakage." (*Id.* at 873.) On May 6, 2016, Plaintiff presented with pain noted to be eight on a scale of ten. (*Id.* at 872.) On December 13, 2016, Plaintiff was seen and noted to be experiencing pain. (*Id.* at 980–82.)

While the ALJ noted many of these incidents in her decision, along with other complaints by Plaintiff and related laboratory results (*id.* at 17), the ALJ did not request additional medical information or opinion to contextualize or understand the test results in relation to, or within the framework of, Plaintiff's symptoms and diagnoses.[9] Instead, the ALJ accorded great weight to Dr. Chua's and Nurse Practioner Zablocki's February 2015 opinions, which were rendered before Plaintiff's 2015 surgery and before the progression of the symptoms documented in Plaintiff's 700-pages of medical records.

As courts in this Circuit have held, "the ALJ must make every reasonable effort to help an applicant get medical reports from [her] medical sources" and "must seek additional evidence or clarification when the report from the claimant's medical source . . . does not contain all the necessary information[.]" *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (internal quotation marks and alterations omitted). "This rule applies even where the plaintiff was

---

> cutting the scar tissue and freeing up the trapped bowel. If any part of the bowel looks unhealthy or dead, it will be cut out and the healthy ends will be sewn back together.

Journal of the American Medical Association, Small Bowel Obstruction Patient Page, available at https://jamanetwork.com/journals/jama/fullarticle/2681748 (emphasis added) (last visited Sept. 9, 2019).

[9] For example, despite noting that Plaintiff's treatment records documented "ongoing complaints of abdominal pain, with intermittent nausea and vomiting after ingesting solid food, and constipation[,]" the ALJ concluded that "apart from some periods of abdominal epigastric tenderness to palpation without rebound or guarding, all other exams were without any significant abnormalities normal [sic]." (Tr. at 17.) The ALJ failed to explain how she reconciled the findings of "abnormalities" with the "normal" findings or why she chose to disregard the abnormal findings.

9

represented by counsel at the hearing." *Vazquez v. Comm'r of Soc. Sec.*, No. 14-CV-6900 (JCF), 2015 WL 4562978, at *17 (S.D.N.Y. July 21, 2015) (citing *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)). This is especially vital when developing the record with respect to a treating physician's opinion "[b]ecause of the considerable weight ordinarily accorded to the opinions of treating physicians." *Rocchio v. Astrue*, No. 08-CV-3796 (JSR) (FM), 2010 WL 5563842, at *11 (S.D.N.Y. Nov. 19, 2010), *report and recommendation adopted*, No. 08-CV-3796 (JSR), 2011 WL 1197752 (S.D.N.Y. Mar. 28, 2011). Therefore, while a "treating physician's statement that the claimant is disabled cannot itself be determinative[,] . . . failure to develop conflicting medical evidence from a treating physician is legal error requiring remand." *Id.* (internal quotation marks omitted) (alterations in the original); *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Moreover, "the ALJ is responsible for developing a full and complete record between the time that elapses between plaintiff's application and plaintiff's hearing date." *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *14 n.60 (E.D.N.Y. July 9, 2010).

Thus, by failing to solicit updated and current medical opinions from Plaintiff's treating sources or from consultative examiners or an expert, following the progression of Plaintiff's symptoms after her February 2015 surgery,[10] the ALJ did not adequately develop the record. The failure to do so precludes this Court's determination of whether the ALJ's denial of benefits was based on substantial evidence. *Alvarez*, 2015 WL 5657389, at *18. Remand is, therefore, warranted.

---

[10] Although the ALJ had in the record, and considered, Dr. Ravi's post-surgery examination and report, even that opinion, issued in June 2015, pre-dated many of Plaintiff's symptoms that progressed after February 2015 and continued into December 2016.

## II. Psychiatric Symptoms

Plaintiff argues that the ALJ substituted her own lay opinion for that of a mental health expert to find that Plaintiff's psychiatric impairments did not satisfy the listed criteria. (Plaintiff Affirmation, Dkt. 16, at ¶ 24.) Plaintiff further argues that the ALJ was required to seek the opinion of a consultative psychiatric examiner. (*See id.*) In determining that Plaintiff's psychiatric symptoms did not meet the listed criteria, the ALJ explained that:

> [Plaintiff's treatment records] describe the claimant as alert and fully oriented, and mental status examinations did not detect the presence of a memory impairment, they do show that the claimant was frequently late or missed her therapy appointments and was eventually discharged. Treatment records additionally reflect multiple occasions where the claimant is described as anxious, uncooperative/demanding; or became agitated and/or left before treatment or her appointment could be concluded. Further, therapy notes relate episodes of tearfulness, and pressured speech. Further, as Depression Screening reflect symptoms of concentration difficulties [sic]. Additionally, treatment records show difficulty in keeping appointments and indicate the claimant experiences ruminative thoughts. She also has had difficulty dealing with such stressors as housing and daughter.

(Tr. at 18 (citations to the record omitted).) While the ALJ found that Plaintiff suffered from severe impairments that included depression and anxiety, the ALJ ultimately concluded that these impairments, as well as Plaintiff's physical impairments, did not meet or medically equal the severity of the impairments in the Listings. (*Id.* at 13–15.)

Plaintiff's medical records with respect to her psychiatric symptoms are inconsistent. Paperwork from the New York State Office of Temporary and Disability Assistance, dated May 1, 2015, notes that Plaintiff's disability allegations include "stomach ulcers, body weakness, low blood pressure," but not psychiatric symptoms. (*Id.* at 124, 141.) Plaintiff's undated disability report appeal form similarly indicates that the conditions she was treated for are "physical" (*id.* at 265), and multiple treatment notes in the record indicate no psychiatric risk assessment or that

11

Plaintiff denied depression (*see, e.g.*, *id.* at 465, 477, 492, 522, 536, 632). And yet, the same appeal form shows that Plaintiff was prescribed celexa for depression and trazadone for insomnia (*id.* at 282); a July 13, 2015 treatment note describes a depression screening that was positive for moderate depression (*id.* at 398); a September 21, 2016 treatment note indicates a diagnosis of "adjustment disorder with mixed anxiety and depressed mood" (*id.* at 966); and a December 5, 2016 treatment note indicates that Plaintiff was "anxious," had a "Positive Depress," and should continue celexa (*id.* at 980–81). Finally, although Plaintiff testified at the hearing before the ALJ, she did not present any information about her psychiatric symptoms. (*See id.* at 35–54.)

A consultative examination is necessary when "try[ing] to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on a claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). "It is considered reversible error for an ALJ not to order a consultative examination when such an examination is necessary for [the ALJ] to make an informed decision," *Falcon v. Apfel*, 88 F. Supp. 2d 87, 91 (W.D.N.Y. 2000) (internal quotation marks omitted), but "an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it," *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (summary order).

Here, the Court finds that the ALJ lacked sufficient information to find that Plaintiff's depression and anxiety did not meet the Listings and that the ALJ failed to adequately develop the record with respect to Plaintiff's psychiatric symptoms to resolve the inconsistencies with regard to the severity of those symptoms. On remand, the ALJ should assist Plaintiff in further developing the record as to her psychiatric symptoms, and, if necessary, refer Plaintiff for a psychiatric consultative examination.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 9, 2019
 Brooklyn, New York